## MELISSA SMYTH ATTORNEY AFFIRMATION: ATTORNEY OF RECORD FOR J.A.V.

I, Melissa Smyth, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge and belief:

1. I am a Staff Attorney in the Immigration Practice at Brooklyn Defender Services, and I represent J.A.V. in his removal proceedings.

2. J.A.V. is a national and citizen of Venezuela who entered the United States around May 3, 2023. He is a 32-year-old man. He is currently detained by ICE at the El Valle Detention Facility in Raymondville, Texas.

3. He entered the United States around May 3, 2023. He was processed by U.S. immigration authorities and released on his own recognizance on May 4, 2023. Removal proceedings were first initiated through a Notice to Appear filed with EOIR on May 22, 2024, and then dismissed upon joint motion by the parties on June 11, 2024 for him to pursue an affirmative asylum application.

4. J.A.V. filed for asylum in the United States based on his political views and having been attacked by criminal gangs. He is terrified to be deported to Venezuela, where he fears he would be seriously harmed or killed. He fears of harm and mistreatment from multiple criminal groups, including the Tren de Aragua gang. He was victimized by that group, which is one of the reasons he cannot return to Venezuela. He is gay, and suffered verbal and physical violence and harassment on account of his sexual orientation, including by gangs in Venezuela. J.A.V. is HIV positive and is terrified that he will suffer severe illness and death if he does not have access to daily medications and consistent medical care. In New York, he was receiving stabilizing medical treatment and support. He was working and had a close-knit group of friends.

5. J.A.V. has never been arrested, charged, or convicted of any criminal offense in the United States. His only record of any legal infraction was a ticket issued for non-payment of a subway fare, for which he paid a fine. J.A.V. has no criminal record in Venezuela. J.A.V. is not and has never been a member of a gang.

6. On February 27, 2025, when ICE detained J.A.V. at his asylum interview and interrogated him, ICE suggested that it was concerned about a tattoo design on his arm that includes flowers and a clock, and a tattoo on his chest that includes a crown. J.A.V. denied that any of his tattoos were connected to Tren de Aragua. He denied being a member of a gang or having any connections to gang members. He chose the design with the flowers and clock for his arm tattoo from among a tattoo artist's pre-drawn designs because he liked the style and size of the design. The crown tattoo is accompanied by the name of a saint and is meant to symbolize royalty. J.A.V. has had his artistic tattoos for many years, including when DHS initially processed and released him on recognizance and when DHS joined his motion to dismiss removal

proceedings. DHS filed a new Notice to Appear after arresting J.A.V. at his USCIS asylum interview.

7. ICE first detained him at the Moshannon Valley Processing Center in Pennsylvania. He had an immigration court Master Calendar Hearing scheduled for March 19, 2025. Despite this, on approximately March 9, 2025, he was transferred with a group of other Venezuelans to El Valle Detention Center in Texas.

8. On March 14, 2025, ICE prepared J.A.V. to be put on a plane, but did not inform him where the plane was going. However, the flight did not go forward and J.A.V. was returned to El Valle that night.

9. On March 15, 2025, ICE again prepared J.A.V. to be put on a plane, along with a group of other Venezuelan ICE detainees. He was transported by bus to another facility where the group of detainees were loaded onto a plane, except for J.A.V. and another individual. J.A.V. by that point was named in a TRO against Alien Enemies Act removals issued by Judge Boasberg of the U.S. District Court for the District of Columbia. ICE officers said that he had "won the lottery." Several other individuals were subsequently removed from the plane after boarding, before it took off. J.A.V. was returned to El Valle that night.

10. At no point in DHS's attempts to remove J.A.V.—neither on March 14 when ICE prepared to put him on a plane, only for the flight to be grounded, nor on March 15 when he was taken to a plane—was J.A.V. told where he was being taken or on what basis. For both of those attempts to remove him, officials only told J.A.V. he would be transferred to another place. J.A.V. was never told in any manner by any officials that his attempted transfer was happening because he was accused of being in Tren de Aragua, nor did any official ever mention the Alien Enemies Act as the basis to remove him. Nor was I, as his lawyer, ever given any notice that the Alien Enemies Act was being used against J.A.V.

11. For all the reasons he fled to the United States and applied for asylum, J.A.V. fears being sent to El Salvador. Given the horrendous and notorious conditions of El Salvador's prisons, his health, safety, and his life would be at serious risk if detained there, or if removed from the United States before his asylum case is fully heard in immigration court. He is at serious risk of death if sent to the Terrorism Confinement Center in El Salvador. J.A.V. was receiving important medical treatment in New York, and he is afraid he will become terribly sick if he does not have access to the proper medical care. He has already missed multiple days of daily medication when he was initially detained by ICE and again when he was transferred to El Valle.

I, Melissa Smyth, swear under penalty of perjury that the forgoing declaration is true and correct to the best of my knowledge and recollection.

/s/_____
Melissa Smyth, Esq.
Executed this 8th day of April, 2025