**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

J.A.V., *et al.*,

*Petitioners–Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity
as President of the United States, *et al.*,

*Respondents–Defendants.*

CIVIL ACTION NO. <u>1:25-cv-0072</u>

**PETITIONERS-PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION**

## <u>PETITIONERS-PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………..…………1

BACKGROUND…………………………………………………………………………2

ARGUMENT……………………………………………………………………………4

    I.     THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF

          RULE 23(a)………………………………………………….…………………4

          A.  The Proposed Class is Numerous That Joinder is Impracticable………………...5

          B.  Members of the Class Have Common Questions of Law and Fact…………...…7

          C.  The Petitioners' Claims Are Typical of Class Members' Claims……..……...…8

          D.  Petitioners and Petitioners' Counsel Will Adequately Protect the

              Interests of the Proposed Class…………………………………….………..9

    II.    THE PROPOSED CLASS SATISFIES RULE 23(b)'S REQUIREMENTS…....…10

CONCLUSION………………………………………………...……………………12

## TABLE OF AUTHORITIES

**Cases**

*Aguilar-Ayala v. Ruiz,*
    973 F.2d 411 (5th Cir. 1992) ................................................................................ 11

*Berger v. Compaq Computer Corp.,*
    257 F.3d 475 (5th Cir. 2001) ................................................................................. 9

*Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n,*
    70 F.4th 914 (5th Cir. 2023) ................................................................................. 10

*Chisholm v. Jindal,*
    No. 97-cv-3274, 1998 WL 92272 (E.D. La. Mar. 2, 1998) ................................... 6

*Cole v. Livingston,*
    No. 4:14-cv-1698, 2016 WL 3258345 (S.D. Tex. June 14, 2016) ........................... 7

*Franco-Gonzalez v. Napolitano,*
    No. 10-cv-2211, 2011 WL 11705815 (C.D. Cal. Nov. 21, 2011) ......................... 10

*Gardner v. Westinghouse Broad. Co.,*
    437 U.S. 478 (1978) .............................................................................................. 5

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982) ........................................................................................... 7, 9

*Ictech-Bendeck v. Waste Connections Bayou, Inc.,*
    No. CV 18-7889, --- F. Supp. 3d ----, 2025 WL 932772 (E.D. La. Mar. 27, 2025) ................ 10

*In re Deepwater Horizon,*
    739 F.3d 790 (5th Cir. 2014) ................................................................................. 7

*In re Rodriguez,*
    695 F.3d 360 (5th Cir. 2012) ............................................................................... 12

*J.D. v. Azar,*
    925 F.3d 1291 (D.C. Cir. 2019) ............................................................................. 6

*J.G.G. v. Trump,*
    No. 25-cv-766-JEB (D.D.C. Mar. 18, 2025) ................................................... 1, 3, 6

*J.G.G. v. Trump,*
    No. 25-cv-766-JEB, 2025 WL 890401 (D.D.C. Mar. 24, 2025) ........................... 3, 6

*Jack v. Am. Linen Supply Co.,*

498 F.2d 122 (5th Cir. 1974) ................................................................. 5, 6

*James v. City of Dallas*,
  254 F.3d 551 (5th Cir. 2001) ............................................................ 8, 9

*Jenkins v. Raymark Indus., Inc.*,
  782 F.2d 468 (5th Cir. 1986) ............................................................ 10

*Jones v. Diamond*,
  519 F.2d 1090 (5th Cir. 1975) ........................................................... 5

*M.D. ex rel. Stukenberg v. Perry*,
  675 F.3d 551 (5th Cir. 2001) ............................................................ 8

*M.D. v. Perry*,
  294 F.R.D. 7 (S.D. Tex. 2013) .......................................................... 7

*Morrow v. Washington*,
  277 F.R.D. 172 (E.D. Tex. 2011) ....................................................... 9

*Mullen v. Treasure Chest Casino, LLC*,
  186 F.3d 620 (5th Cir. 1999) ........................................................ 6, 8, 10

*Murillo v. Musegades*,
  809 F. Supp. 487 (W.D. Tex. 1992) ................................................ 9, 11, 12

*ODonnell v. Harris Cnty.*,
  No. CV H-16-1414, 2017 WL 1542457 (S.D. Tex. Apr. 28, 2017) ........................... 11

*Pederson v. La. State Univ.*,
  213 F.3d 858 (5th Cir. 2000) ............................................................ 5, 6

*Penson v. Terminal Transp. Co.*,
  634 F.2d 989 (5th Cir. 1981) ........................................................... 11, 12

*Phillips v. Joint Legislative Comm.*,
  637 F.2d 1014 (5th Cir. 1981) .......................................................... 5, 6

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ...................................................................... 4

*Simms v. Jones*,
  296 F.R.D. 485 (N.D. Tex. 2013) ......................................................... 8

*Steward v. Janek*,
  315 F.R.D. 472 (W.D. Tex. 2016) ......................................................... 6

*Valentine v. Collier*,

iii

490 F. Supp. 3d 1121 (S.D. Tex. 2020) ............................................................... 7, 8

*Vietnamese Fishermen's Ass'n v. Knights of the Ku Klux Klan*,
543 F. Supp. 198 (S.D. Tex. 1982) ..................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ...................................................................................... passim

*Yates v. Collier*,
868 F.3d 354 (5th Cir. 2017) ......................................................................... passim

*Zeidman v. J. Ray McDermott & Co., Inc.*,
651 F.2d 1030 (5th Cir. 1981) ........................................................................... 5, 6

**Statutes**

50 U.S.C. § 21 ...................................................................................................... 3

**Other Authorities**

5 J. Newberg, *Class Actions* § 8812 (1977) ............................................................ 5

Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de
Aragua, 90 Fed. Reg. 13033 (Mar. 15, 2025) ...................................................... 3

William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:35 (6th ed.) ................... 2

William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2017) ...................................... 5, 6, 12

**Rules**

Advisory Committee Notes, 39 F.R.D. 98 (1966) ....................................................... 11

Fed. R. Civ. P. 23 .............................................................................................. 1, 4

Fed. R. Civ. P. 23(a) .......................................................................................... 1, 4

Fed. R. Civ. P. 23(a)(1) ......................................................................................... 5

Fed. R. Civ. P. 23(a)(2) ......................................................................................... 7

Fed. R. Civ. P. 23(a)(3) ......................................................................................... 8

Fed. R. Civ. P. 23(a)(4) ......................................................................................... 9

Fed. R. Civ. P. 23(b)(2) ................................................................................... passim

iv

## INTRODUCTION

A class action is appropriate for this challenge to Respondents-Defendants ("Respondents") invocation of the Alien Enemies Act of 1798 ("AEA"). The President has invoked a war power, the AEA, in an attempt to summarily remove noncitizens from the United States and bypass the immigration laws that Congress has enacted. That invocation is patently unlawful: It violates the statutory terms of the AEA; unlawfully bypasses the INA; and infringes on noncitizens' constitutional right to Due Process under the Fifth Amendment.[1]

Petitioners-Plaintiffs ("Petitioners") seek to certify the following class under Federal Rules of Civil Procedure 23(a) and 23(b)(2):

> All noncitizens in custody in the Southern District of Texas who were, are, or will be subject to the March 2025 Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua' and/or its implementation.

The proposed class readily satisfies the requirements of Rule 23.

Numerosity is present, as demonstrated by the number of people in the United States that the government has admitted having designated as subject to the AEA Proclamation. *See* Cerna Decl. ¶ 6, *J.G.G. v. Trump*, No. 25-cv-766-JEB (D.D.C. Mar. 18, 2025), ECF No. 28-1 (identifying a total of 258 people in the United States who the government believes are TdA members). All class members suffer the same injury: unlawful removal under the AEA, unlawful denial of their statutory rights to the removal and detention procedures contained in the INA, and violation of their right to due process. And the class raises common questions that will generate common answers, including whether the Proclamation and its implementation violate the AEA, the INA, and the statutory protections for asylum seekers. The Petitioners' legal claims are typical of those whom they seek to represent. Petitioners are represented by experienced counsel with significant

---

[1] Pursuant to LR7.1(D), Petitioners' counsel attempted to confer with counsel for Respondents prior to filing by e-mailing the local U.S. Attorneys' office at 4:25 p.m. CT and seeking their position. Petitioners' counsel was not able to obtain a response prior to filing.

experience litigating class actions and cases involving the rights of noncitizens. And the proposed class satisfies Rule 23(b)(2) because Respondents have acted or refused to act on grounds that apply generally to the class by summarily removing noncitizens without statutorily and constitutionally mandated safeguards. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011); *see also Yates v. Collier*, 868 F.3d 354, 367 (5th Cir. 2017).

The lack of notice to individuals and undersigned counsel reinforces why certification of a district-wide class is necessary in this case. While the government has identified hundreds of individuals who could be removed subject to the Proclamation, counsel is aware of the identity and location of only a handful of such individuals, including individuals who are detained in Orange County, New York and Raymondville, Texas. Proceeding with a district-wide class would thus serve the purpose of Federal Rule of Civil Procedure 23 by protecting the interests of the class, regardless of their location. *See* William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:35 (6th ed.) (discussing "critical safeguards for class members that certification alone can provide").

The Court should grant class certification under Rule 23(b)(2), appoint the Petitioners as Class Representatives, and appoint the undersigned as Class Counsel.

## BACKGROUND

### President Trump's Proclamation Invoking the AEA

The background of this litigation is set forth in greater detail in Petitioners' simultaneously filed Complaint and Motion for a TRO. On March 14, the President signed the AEA Proclamation at issue here. It provides that "all Venezuelan citizens 14 years of age or older who are members of TdA [Tren de Aragua], are within the United States, and are not actually naturalized or lawful permanent residents of the United States are liable to be apprehended, restrained, secured, and removed as Alien Enemies." *See Invocation of the Alien Enemies Act Regarding the Invasion of*

2

*the United States by Tren de Aragua* (Mar. 15, 2025).[2] Although the AEA calls for a "public proclamation," 50 U.S.C. § 21, the administration did not make the invocation public until around 3:53 p.m. EDT on March 15, despite making extensive preparations to remove individuals still in removal proceedings and seeking asylum. *See J.G.G. v. Trump*, No. 25-5067, 2025 WL 914682, at *17 (D.C. Cir. Mar. 26, 2025); *J.G.G. v. Trump*, No. 25-cv-766-JEB, 2025 WL 890401, at *3 (D.D.C. Mar. 24, 2025).

The government began moving Venezuelan men and women whom they claimed to be TdA members to facilities in Texas to stage their removal, despite the fact that many were still in immigration removal proceedings. Mere hours after the Proclamation was published, the government staged nearly 300 people for removal out of Texas in this District, many of whom did not have final orders and were pursuing asylum and other humanitarian protections. That group included named Petitioners J.A.V., J.G.G., and W.G.H., three noncitizen Venezuelan men in custody who were transferred from around the country, transported with hundreds of other noncitizens from the El Valle Detention Facility in Texas to the airport, and nearly removed on planes that evening to a notorious Salvadoran prison. Only the *J.G.G.* court's order in D.C. has kept them safely in the United States. But now with the order lifted, individuals in the proposed class face the possibility of imminent removal.

Although the government has identified 86 people in detention subject to the Proclamation and 172 more who are at liberty, *see supra*, Cerna Decl. ¶ 6, undersigned counsel is, by chance, aware of the identity and location of only a handful of individuals in the United States who are designated under the Proclamation including the three named Petitioners themselves, two others who were recently transferred back to New York, and one other represented individual in Texas who was nearly removed with the group on March 15. And Petitioners know of these individuals

---

[2] *Available at*: https://perma.cc/ZS8M-ZQHJ.

only because they have immigration counsel who were able to follow their clients' complicated transfers and contact undersigned counsel.

**<u>Named Petitioners and the Proposed Class</u>**

The Petitioners are several noncitizens from Venezuela who are detained at El Valle Detention Facility in Texas. *See* ECF No. 1, Compl. ¶¶ 5-6, 11-13. Petitioners are representative of other noncitizens subject to the Proclamation under the Alien Enemies Act because they are in civil detention by ICE, have been designated alien enemies under the Proclamation, and are thus at risk of removal based on the Proclamation. The proposed class does not include individuals who may be removed pursuant to other authorities, such as the immigration laws.

## ARGUMENT

A plaintiff whose suit satisfies the requirements of Federal Rule of Civil Procedure 23 has a "categorical" right "to pursue his claim as a class action." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010). The "suit must satisfy the criteria set forth in [Rule 23(a)] (*i.e.*, numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)." *Id*. As set forth below, Petitioners' proposed class satisfies all four of the Rule 23(a) requirements.

Class Petitioners also demonstrate below that Respondents "ha[ve] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," as required under Rule 23(b)(2). "[A] single injunction or declaratory judgment would provide relief to each member of the class," and therefore certification is appropriate under Rule 23(b)(2). *See Dukes*, 564 U.S. at 360; *see also Yates*, 868 F.3d at 367

## I.    THE PROPOSED CLASS SATISFIES THE REQUIREMENTS OF RULE 23(a)

### A.    The Proposed Class Is So Numerous That Joinder Is Impracticable.

The proposed class is sufficiently numerous to make joinder impracticable. Fed. R. Civ. P. 23(a)(1). There is no fixed number of class or subclass members required for a finding of numerosity. *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038–39 (5th Cir. 1981) ("federal trial courts are quite willing to accept common sense assumptions in order to support a finding of numerosity") (quoting 5 J. Newberg, *Class Actions* § 8812, at 836 (1977)).

Instead, the key question is "whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Id.* at 1038 (quoting *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014, 1022 (5th Cir. 1981)). These other relevant factors include "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each Plaintiff's claim." *Id.* (citation omitted). Courts also consider the "financial resources of class members, and the ability of claimants to institute individual suits," as well as the "judicial economy arising from the avoidance of a multiplicity of actions." William B. Rubenstein, *Newberg on Class Actions* § 3:12 (5th ed. 2017). Finally, "the fact that the class includes unknown, unnamed future members also weighs in favor of certification." *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000) (citing *Jack v. Am. Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974)).

"The general rule encouraging liberal construction of civil rights class actions applies with equal force to the numerosity requirement of Rule 23(a)(1)," and "[s]maller classes are less objectionable where . . . the plaintiff is seeking injunctive relief on behalf of future class members as well as past and present members." *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975), *abrogated on other grounds*, *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478 (1978). Joinder is presumptively impracticable when a class consists of forty members or more. *Mullen v. Treasure*

5

*Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (citing Newberg on Class Actions, *supra*, § 3:05).

The proposed class easily meets the numerosity requirement. Several weeks ago, the government identified 86 people in detention subject to the Proclamation and 172 more who are at liberty. *See supra*, Cerna Decl. ¶ 6. Based on the former number alone, Petitioners clear the bar, but there are likely to be more individuals entering the class as more of the 172 individuals are taken into ICE custody. Further, because ICE continues to "track[] the TdA members who are amenable to removal proceedings," *id.*, "the class includes unknown, unnamed future members." *Pederson*, 213 F.3d at 868 n.11; *see also Jack*, 498 F.2d at 124 (discussing impracticability of joinder of unknown persons); *Phillips*, 637 F.2d at 1022 ("joinder of unknown individuals is certainly impracticable").

Joinder is impracticable not only because of the sheer numbers, but also because class members are frequently dispersed in different detention facilities, even throughout Texas, prior to rapid staging for removal. *See J.G.G.*, 2025 WL 914682, at *17; *J.G.G.*, 2025 WL 890401, at *3; *see also, e.g., Mullen*, 186 F.3d at 624 (joinder impracticable where class members were "transient" and "geographically dispersed"); *Zeidman*, 651 F.2d at 1038 (geographic dispersion relevant to impracticability of joinder); *Steward v. Janek*, 315 F.R.D. 472, 480 (W.D. Tex. 2016) (same). Joinder is further impracticable given the nature of the class. *See J.D. v. Azar*, 925 F.3d 1291, 1323 (D.C. Cir. 2019) (stating that joinder may be impracticable in light of "fluidity" of custody, "the dispersion of class members across the country, and their limited resources"); *Chisholm v. Jindal*, No. 97-cv-3274, 1998 WL 92272, at *3 (E.D. La. Mar. 2, 1998) (finding joinder impracticable, "especially in light of the fact that [the putative class members] are indigent").

**B.  Members of the Class Have Common Questions of Law and Fact.**

The claims asserted by the proposed class include common questions of law and fact that satisfy Rule 23(a)(2).  At bottom, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  "To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims."  *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014). Even a single common question of law or fact is sufficient, so long as the resolution of the common question "will *resolve* an issue that *is central to the validity* of each one of the class member's claims in one stroke."  *Cole v. Livingston*, No. 4:14-cv-1698, 2016 WL 3258345, at *3 (S.D. Tex. June 14, 2016), *aff'd sub nom. Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017).  A "pattern or practice that is generally applicable to the class as a whole" satisfies that requirement.  *M.D. v. Perry*, 294 F.R.D. 7, 28 (S.D. Tex. 2013).

Petitioners in this case have identified a "single course of conduct"—the unlawful removal of noncitizens under the AEA—that provides the basis for every class member's injury.  *M.D.*, 294 F.R.D. at 28-29; *see also Valentine v. Collier*, 490 F. Supp. 3d 1121, 1158 (S.D. Tex. 2020) (commonality met where "[e]ither the answer to this question is 'yes,' in which case [defendants are] required to provide that specific accommodation for the entire subclass, or the answer is 'no,' in which case class-wide relief is not warranted. But either way, the answer to that question can be resolved with respect to every . . . class member at once."), *rev'd on other grounds*, 993 F.3d 270 (5th Cir. 2021).  In addition to this common injury, numerous questions are common to the proposed class: whether the removals go beyond the power granted to the President under the AEA; whether the removals violate statutory and regulatory immigration removal procedures; and whether Respondents' denial of meaningful procedural protections to challenge Petitioners' removal violates the AEA and Fifth Amendment.  Any one of these common issues, standing

7

alone, is enough to satisfy Rule 23(a)(2)'s permissive standard. *See Yates*, 868 F.3d at 365 n.6 ("we reaffirm that Rule 23(a)(2) requires only that a plaintiff demonstrate at least one common question of law or fact" (citing *Dukes*, 564 U.S. at 359)); *Simms v. Jones*, 296 F.R.D. 485, 497 (N.D. Tex. 2013) (same). And while class members may present individualized defenses to their designation as alien enemies, "this 'obvious fact does not destroy commonality'" for purposes of addressing these common questions. *Valentine*, 490 F. Supp. 3d at 1159 (citing *Yates*, 868 F.3d at 363).

Answering any one of these common legal questions will "drive the resolution of the litigation." *Dukes*, 564 U.S. at 350. Should the Court agree that Respondents cannot lawfully remove noncitizens under the AEA, all class members will benefit from the requested relief, which includes a declaration to that effect and an injunction preventing Respondents from conducting the removals. Should the government's use of the AEA be upheld by this Court and on appeal, should one be taken, then at that point individual habeas actions may be needed to address whether any given detainee is, on the particular facts, a TdA member who falls with the Proclamations. But at this stage, a class action is the appropriate means of addressing the threshold systemic issues that affect all of the class members.

### C.    The Petitioners' Claims Are Typical of Class Members' Claims.

Petitioners here have claims typical of the proposed class. *See* Fed. R. Civ. P. 23(a)(3). "[T]he test for typicality is not demanding," *Mullen*, 186 F.3d at 625, and "does not require a complete identity of claims," *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) (citing 5 James Wm. Moore et al., Moore's Federal Practice ¶ 23.24[4] (3d ed. 2000), *abrogated on other grounds by M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 551, 572–73 (5th Cir. 2001). Rather, the

class representative's claim must have the same *essential characteristics* as that of the putative class. *Morrow v. Washington*, 277 F.R.D. 172, 194 (E.D. Tex. 2011). Claims arising from a similar course of conduct and sharing the same legal theories are typical claims even if there is factual difference between the representative and others in the class. *James*, 254 F.3d at 571.

Typicality is satisfied here for largely the same reasons that commonality is satisfied. *See Murillo v. Musegades*, 809 F. Supp. 487, 502 (W.D. Tex. 1992) ("The commonality and typicality requirements of Rule 23(a) tend to merge.") (quoting *Falcon*, 457 U.S. at 157 n.13). Each proposed class member, including the proposed class representatives, faces the same principal injury (unlawful removal), based on the same government policy (invocation of the AEA), which is unlawful as to the entire class because it violates the AEA itself, as well as the immigration laws and the Constitution. Petitioners thus share an identical interest in invalidation of" Respondents' implementation of removals pursuant to the Proclamation. Moreover, as with commonality, any factual differences that might exist here between Petitioners and proposed class members are not enough to defeat typicality.

### D. Petitioners and Petitioners' Counsel Will Adequately Protect The Interests Of The Proposed Class.

Petitioners and undersigned counsel also fulfill the final requirement that "[t]he representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry has two components: (1) whether the attorneys retained by the proposed class representatives are competent to conduct the litigation; and (2) whether the proposed class representatives have the willingness and ability to take an active role in and control the litigation and to protect the interest of absentees. *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001).

Petitioners will fairly and adequately protect the interests of the proposed class. Petitioners do not seek any unique or additional benefit from this litigation that may make their interests

different from or adverse to those of absent class members. Instead, Petitioners aim to secure relief that will protect them and the entire class from Respondents' challenged policy and to enjoin Respondents from further violations. Petitioners have no incentive to deviate from this class relief. Nor do Petitioners seek financial gain at the cost of absent class members' rights. There are no differences that "create conflicts between the named plaintiffs' interests and the class members' interests." *Mullen*, 186 F.3d at 626; *see also Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

Finally, proposed class counsel includes experienced attorneys with extensive experience in complex immigration cases and class action litigation. *See* Galindo Decl. ¶¶ 1-11. As the declaration makes clear, Proposed Class Counsel have been appointed class counsel in several successful class action cases concerning the rights of noncitizens.[3] *See, e.g., id.* ¶¶ 4, 7, 9.

## II. THE PROPOSED CLASS SATISFIES RULE 23(b)'S REQUIREMENTS

Rule 23 requires that, in addition to satisfying the requirements of Rule 23(a), a putative class must also fall within one of the parts of subsection (b). *Yates*, 868 F.3d at 366. Petitioners here seek class certification under Rule 23(b)(2), which provides that a class action is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

---

[3] District courts in the Fifth Circuit consider ascertainability an "implied requirement to Rule 23," "requir[ing] that the proposed class be adequately defined and clearly ascertainable." *Ictech-Bendeck v. Waste Connections Bayou, Inc.*, No. CV 18-7889, --- F. Supp. 3d ----, 2025 WL 932772, at *7 (E.D. La. Mar. 27, 2025) (citing *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 933 (5th Cir. 2023)). "[T]he touchstone of ascertainability is whether the class is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.* (citation omitted). The proposed class here is readily ascertainable because membership in the class is defined by clear and objective criteria that are known to the government and because identifying class members is administratively feasible, as demonstrated by the government's declaration in *J.G.G.* describing their identification of TdA members. *Supra.*

The Fifth Circuit instructs that Rule 23(b)(2) "was intended primarily to facilitate civil rights class actions, where the class representatives typically sought broad injunctive or declaratory relief against discriminatory practices." *Penson v. Terminal Transp. Co.*, 634 F.2d 989, 993 (5th Cir. 1981) (citing Advisory Committee Notes, 39 F.R.D. 98, 102 (1966)). Thus, courts in the Fifth Circuit have certified under Rule 23(b)(2) similar classes of individuals in custody or subject to immigration-related policies. *See, e.g.*, *Murillo*, 809 F. Supp. at 503 (certifying all individuals of Hispanic descent who reside, are employed, attend school or travel within a specific Texas school subject to unlawful stops, searches and detention by immigration officers); *ODonnell v. Harris Cnty.*, No. CV H-16-1414, 2017 WL 1542457, at *1 (S.D. Tex. Apr. 28, 2017) (certifying Rule 23(b)(2) class of misdemeanor arrestees who cannot afford monetary bail due to indigency, asserting violation of Equal Protection and Due Process).[4]  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Dukes*, 564 U.S. at 360 (citation omitted).

Rule 23(b)(2) is satisfied here because Respondents have acted on grounds that apply generally to the class by subjecting them all to the same Proclamation and attempting to summarily remove them without complying with the AEA, INA and due process. *See Yates*, 868 F.3d at 366 ("It is well-established that "[i]nstead of requiring common issues, Rule 23(b)(2) requires common behavior by the defendant toward the class."" (quoting *In re Rodriguez*, 695 F.3d 360, 365 (5th Cir. 2012))). Petitioners seek injunctive and declaratory relief that would benefit them as well as all members of the proposed class in the same fashion. "The relief [Petitioners] seek is precisely

---

[4] *See also, e.g.*, *Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 415, 421 (5th Cir. 1992) (class action habeas petition challenging detention of noncitizen witnesses where government opposed class certification based only on typicality and mootness); *Vietnamese Fishermen's Ass'n v. Knights of the Ku Klux Klan*, 543 F. Supp. 198, 202 (S.D. Tex. 1982) (noting class of all Vietnamese fishermen subject to civil rights violations by Ku Klux Klan and Texas Emergency Reserve).

the type of remedial action for which Rule 23(b)(2) was designed." *Murillo*, 809 F. Supp. at 503 (citing *Penson*, 634 F.2d 993); *see also Newberg on Class Actions*, *supra*, § 1:3 (Rule 23(b)(2) "is typically employed in civil rights and other cases where monetary relief is not the primary remedy. The (b)(2) class action is often referred to as a 'civil rights' or 'injunctive' class suit").

The class is exactly the kind of class that Rule 23(b)(2) is meant to embrace. The class's interests are sufficiently related to warrant aggregate litigation. This is especially the case because members of the proposed class are in detention, often lack immigration counsel, and are indigent; they may also be detained in various facilities across the country and are therefore very unlikely to bring their own individual suits. It is far more efficient for this Court to grant injunctive and declaratory relief protecting all the class members than to force individuals to pursue piecemeal litigation, especially as the government has already announced its plans to swiftly deport people before they have the opportunity to seek judicial intervention.

## CONCLUSION

The Court should certify the proposed Class under Rule 23(a) and 23(b)(2), appoint the Petitioners as Class Representatives, and appoint the undersigned as Class Counsel.

Dated: April 9, 2025

Lee Gelernt*
Daniel Galindo*
Ashley Gorski*
Patrick Toomey*
Sidra Mahfooz*
Omar Jadwat*
Hina Shamsi*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
dgalindo@aclu.org
agorski@aclu.org

Respectfully submitted,

*/s/ Adriana Piñon*
Adriana Piñon
TX State Bar No: 24089768; SDTX No.
1829959
Savannah Kumar
TX State Bar No.: 24120098; SDTX
admission pending
Charelle Lett
TX State Bar No.: 24139900; SDTX No.
3908204
Thomas Buser-Clancy
TX State Bar No: 24078344; SDTX No.
1671940
ACLU FOUNDATION OF TEXAS, INC.
P.O. Box 8306,

12

ptoomey@aclu.org
smahfooz@aclu.org
ojadwat@aclu.org
hshamsi@aclu.org

Noelle Smith*
Oscar Sarabia Roman*
My Khanh Ngo*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
nsmith@aclu.org
osarabia@aclu.org
mngo@aclu.org

Houston, TX 77288
(713) 942-8146
apinon@aclutx.org
skumar@aclutx.org
clett@aclutx.org
tbuser-clancy@aclutx.org

*Attorneys for Plaintiffs-Petitioners*
*\*Pro hac vice application forthcoming*

13

## CERTIFICATE OF SERVICE

I certify that on April 9, 2025, a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system which sends notice of electronic filing to all counsel of record.

*/s/ Adriana Piñon*
Adriana Piñon, Texas Bar No. 24089768
SDTX Federal Bar. No. 1829959
ACLU FOUNDATION OF TEXAS
P.O. Box 8306
Houston, TX, 77002
Tel: 713-942-8146
Fax: 713-942-8966
apinon@aclutx.org