UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| J.A.V., *et al.*, | § | |
| | § | |
| Petitioners, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 1:25-CV-072 |
| | § | |
| DONALD J. TRUMP, *et al.*, | § | |
| | § | |
| Respondents. | § | |

## ORDER AND OPINION

In this lawsuit brought under 28 U.S.C. § 2241, Petitioners J.A.V., J.G.G., and W.G.H. challenge Respondents' attempt to remove them from the United States based on the Alien Enemies Act, 50 U.S.C. § 21, and the Proclamation that President Donald Trump issued on March 14, 2025, entitled "Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua." Simultaneous with their initiation of this habeas action, Petitioners presented a motion to certify a class of "[a]ll noncitizens in custody in the Southern District of Texas who were, are, or will be subject to the [Proclamation] and/or its implementation." (Class Cert. Mot., Doc. 4, 7)

For the following reasons, and based on the record and the applicable law, the Court finds the requested relief appropriate, to the extent indicated in this Order and Opinion.

## I.     Analysis

Petitioners ask the Court to certify a class based on Federal Rule of Civil Procedure 23(b)(2) or, alternatively, to adopt a multi-party proceeding similar to a Rule 23 class action to address the common questions of law that the lawsuit presents. (PI Mot., Doc. 42, 36; *see also* Class Cert. Mot., Doc. 4, 7)

Respondents dispute that Petitioners can satisfy the Rule 23 requirements for class certification, arguing that "no basis" exists to certify a class to resolve "whether an alien has been

properly included in the category of alien enemies–necessarily individual determinations." (Resp., Doc. 45, 38)  In addition, they allude to a threshold question of whether a class action is appropriate in the context of a petition for a writ of habeas corpus brought under 28 U.S.C. § 2241. (*Id.* ("Even if a class could be brought in habeas, . . . ."))

Although neither side devotes much attention to the issue, the Court begins with the threshold question.

### A. Class Certification in a Habeas Corpus Proceeding

The Fifth Circuit and the Supreme Court have never explicitly ruled that class actions are a proper mechanism in habeas corpus actions. *See Jennings v. Rodriguez*, 583 U.S. 281, 324 n.7 (2018) ("This Court has never addressed whether habeas relief can be pursued in a class action.") (Thomas, J., concurring); *Schall v. Martin*, 467 U.S. 253, 261 n.5 (1984) ("We have never decided whether Federal Rule of Civil Procedure 23, providing for class actions, is applicable to petitions for habeas corpus relief.").  That said, the Supreme Court has reviewed issues in cases where the district court certified a class in a habeas proceeding, although the defendant did not challenge the certification on appeal. *See, e.g.*, *Nielsen v. Preap*, 586 U.S. 392 (2019) (reviewing issues in a habeas class action challenging mandatory detention without bond); *Schall*, 467 U.S. at 261 n.10 ("Although appellants contested the class certification in the District Court, they did not raise the issue on appeal[.]").

Other circuit courts have addressed the matter.  In 1972, the Ninth Circuit rejected the argument that "a petition for writ of habeas corpus can never be treated as a class action." *Mead v. Parker*, 464 F.2d 1108, 1112 (9th Cir. 1972); *see also Cox v. McCarthy*, 829 F.2d 800, 804 (9th Cir. 1987) ("This court has held that a class action may lie in habeas corpus.") (citing *Mead*, 464 F.2d at 1112–13).  While the court in *Mead* recognized that "the usual habeas corpus case relates only to the individual petitioner and to his unique problem[,]" the court concluded that a class action would be appropriate "where the relief sought can be of immediate benefit to a large and

amorphous group." *Mead*, 464 F.2d at 1113.  The following year, the Eighth Circuit agreed with *Mead* "that under certain circumstances a class action provides an appropriate procedure to resolve the claims of a group of petitioners and avoid unnecessary duplication of judicial efforts in considering multiple petitions, holding multiple hearings, and writing multiple opinions." *Williams v. Richardson*, 481 F.2d 358, 361 (8th Cir. 1973).  The court explained that "a method by which the common claims of a large group of petitioners may be properly litigated without endangering the individual rights of the class should not be summarily foreclosed unless clearly inappropriate under the circumstances." *Id.*

In 1974, the Second Circuit considered a district court's certification of a class of young adults who brought a habeas action to challenge their detention under a statute that resulted in a sentence of four years in a youth rehabilitation facility, when adults who committed the same misdemeanor received sentences of no more than one year.  The court expressed that "the class action device should not be imported into collateral actions, at least in its full vigor as contemplated by Rule 23." *U.S. ex rel. Sero v. Preiser*, 506 F.2d 1115, 1125 (1974).  The decision clarified, however, that the All Writs Act, 28 U.S.C. § 1651, authorized courts to "fashion for habeas actions 'appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage.'" *Id.* (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)).  The "unusual circumstances" of the case presented "a compelling justification for allowing a multi-party proceeding similar to the class action authorized by the Rules of Civil Procedure." *Id.*  The court reasoned that the legal challenge to the statute was "applicable on behalf of the entire class, uncluttered by subsidiary issues." *Id.* at 1126.  Allowing the district court to proceed through a class-like procedure avoided "the considerable expenditure of judicial time and energy in hearing and deciding numerous individual petitions presenting the identical issue." *Id.*

Other circuit courts have found *Sero* persuasive and have recognized the availability of procedures analogous to Rule 23 classes in habeas action proceedings. *See LoBue v. Christopher*,

82 F.3d 1081, 1085 (D.C. Cir. 1996) (explaining that courts have developed "equivalents to class actions in habeas"); *Napier v. Gertrude*, 542 F.2d 825, 827 n.2 (10th Cir. 1976) ("It has been decided in other circuits that Rule 23 class actions are technically inapplicable to habeas corpus proceedings. The court may, however, apply an analogous procedure by reference to Rule 23 in proper circumstances."); *Bijeol v. Benson*, 513 F.2d 965, 967 (7th Cir. 1975) ("[W]hile Rule 23 [ ] does not apply, a representative action may be maintained in the unusual circumstances of this case[.]").

In *Bijeol*, the Seventh Circuit expressed concerns that "[a]llowing wider representation in a habeas corpus action might very well result in injustice to absent prisoners within the represented class, who, if entitled to the benefits of the action, would also be affected, if not bound, by an adverse determination." *Bijeol*, 513 F.2d at 969. The court addressed the concern by limiting the class to the district court's jurisdiction–effectively, to one prison–and finding that "all prisoners in the represented class [in that prison] were in fact informed about the action[.]" *Id.* at 968. In addition, the Seventh Circuit expressed its confidence that despite the class being limited to the Southern District of Indiana, the respondents would act consistent with the decision throughout the circuit.

These authorities, and in particular *Sero* and those following its reasoning, confirm that district courts, in appropriate circumstances, may rely on the All Writs Act to fashion relief analogous to a class action. The All Writs Act authorizes courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. This language permits courts to employ "appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage," in habeas proceedings. *Harris*, 394 U.S. at 299. When determining whether a procedure analogous to a Rule 23 class action is appropriate in a particular habeas corpus proceeding, courts can consider the Rule 23 factors. *See Napier*, 542 F.2d at 827 n.2. As a result, the Court will turn to those factors.

4 / 12

## B. Rule 23 Factors

To certify a class under Rule 23, a court must find that the proposed class meets the requirements of Rule 23(a), which include: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the representative parties must be typical of those made by the class; and (4) it must be shown that the representative parties will fairly and adequately protect the interests of the class.

### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." To satisfy this prerequisite, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *See Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir. 1981). "The proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors." *Phillips v. Joint Legislative Comm. on Performance & Expenditure Rev. of State of Miss.*, 637 F.2d 1014, 1022 (5th Cir. 1981) (concluding that joinder of unknown individuals was impracticable because the alleged class included future applicants that were necessarily unidentifiable and not subject to enumeration); *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999) (concluding that the district court reasonably inferred from the transient nature of the putative class members' employment in the gambling business that some of them would be geographically dispersed and unavailable for joinder); *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980) ("The basic question is practicability of joinder, not number of interested persons per se."). These factors include the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim. *See Zeidman*, 651 F.2d at 1038; *see also Garcia*, 618 F.2d at 267 ("Practicability of joinder depends on size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic

dispersion."). "[T]he fact that the class includes unknown, unnamed future members also weighs in favor of certification." *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000); *see also Jack v. American Linen Supply Co.*, 498 F.2d 122, 124 (5th Cir. 1974) ("The alleged class also includes unnamed, unknown future black employees who will be affected by [ ] discriminatory policies, and joinder of unknown individuals is certainly impracticable.").

Turning to the present matter, at the hearing on the Motion for Preliminary Injunction, Respondents represented that since the Supreme Court's decision in *Trump v. J.G.G.*, —U.S. —, No. 24A931, 2025 WL 1024097 (Apr. 7, 2025), no individual currently detained in the Southern District of Texas has been notified of being designated an alien enemy under the Proclamation and subject to removal under the AEA.[1]   In other words, Respondents claim no individual currently falls within the proposed class, other than the Named Petitioners and the petitioner in *Zacarias Matos v. Venegas, et al.*, Civil Action No. 1:25-cv-057, pending before this Court.

In response, Petitioners note that in a separate proceeding, "the government identified 86 people in detention subject to the Proclamation and 172 more who are at liberty." (Class Cert. Mot., Doc. 4, 12 (citing Cerna Decl. ¶ 6, *J.G.G. v. Trump*, No. 25-cv-766-JEB (D.D.C. Mar. 18, 2025)))  The declaration on which Petitioners rely, however, leaves unclear the location of the referenced individuals.  As a result, the record does not identify any individuals beyond the Named Petitioners (and Zacarias) who currently would fall within the proposed class.

Still, Respondents do not contest that the Executive Branch can transfer detained aliens to different detention facilities, including those within this Court's jurisdiction.  And Respondents do not contest that before the *J.G.G.* decision, about 100 individuals were detained in the Southern District of Texas and had been designated as alien enemies under the Proclamation. *See J.G.G. v. Trump*, No. CV 25-766 (JEB), 2025 WL 1119481, at *3 (D.D.C. Apr. 16, 2025) (citing article with White House official statements).  Thus, the number of Venezuelan aliens who

---

[1] The parties agree that before *J.G.G.*, the Named Petitioners had been designated as alien enemies under the Proclamation.

6 / 12

Respondents could designate as alien enemies under the Proclamation and detain in or remove through this Court's geographic jurisdiction remains fluid.

The Court finds that Respondents have the ability to transfer a significant number of unidentified Venezuelan aliens into the Southern District of Texas, designate them as alien enemies under the Proclamation, and subject them to removal under the AEA. Respondents could utilize detention facilities for these purposes throughout the Southern District of Texas, rendering joinder impracticable due to the geographic dispersion. The fact that these individuals currently remain unknown further precludes their joinder. Thus, the factor of numerosity supports the application of an analogous class-like procedure.

### 2. Commonality

This factor requires the plaintiff to identify "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). A common question must be "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Frequently, the class certification analysis overlaps with the merits of the plaintiff's underlying claim. *Id.* at 351–55 (concluding that because respondents provided no proof of a "general policy of discrimination," they had not established the existence of any common question).

Courts may refuse class certification where the "[class-wide] liability issues are relatively straightforward," but there are "vastly more complex individual issues." *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006) (upholding the denial of class certification because the complexity of the individualized causation and damages issues outweighed the class-wide liability issues). However, the presence of individual fact issues does not necessarily defeat commonality. The Fifth Circuit's decision in *In re Deepwater Horizon* proves illustrative. *See In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014). In that case, the district court certified a

class of individuals asserting economic loss and property damage resulting from an offshore oil spill. Various parties appealed the certification on various grounds, including that damages would be disparate and that some class members had suffered no damages. As to the factor of commonality, the Fifth Circuit reaffirmed that "class members must raise at least one contention that is central to the validity of each class member's claims." *Id.* at 810. "[T]he legal requirement that class members have all 'suffered the same injury' can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects–the damages–are diverse." *Id.* at 810–11. As the district court had identified numerous common issues of law that related to liability, the presence of individualized damages analyses did not defeat commonality, especially when "virtually every issue prior to damages [wa]s a common issue." *Id.* at 811 (quoting *Bertulli v. Independent Ass'n of Continental Pilots*, 242 F.3d 290, 298 (5th Cir. 2001)).

The present matter raises many common questions of law, but also indisputably raises some questions of fact that would require individualized hearings to resolve. As to the former, Petitioners challenge the lawfulness of the President's invocation of the AEA through the Proclamation. They argue, primarily, that the preconditions required to apply the AEA do not exist, that the intended application of the Proclamation and the AEA violate the designated alien enemies' due process rights under the Constitution, and that the procedures that Respondents seek to follow violate the Immigration and Nationality Act and the Convention Against Torture. These issues hold true for any individual that Respondents designate as an alien enemy under the Proclamation and subject to removal under the AEA. A favorable result on any of these legal theories as to one individual will prove equally applicable to other Venezuelan aliens designated as alien enemies under the Proclamation. As a result, the Court finds that Petitioners identify "at least one contention that is central to the validity of each class member's claims." *Id.* at 810; *see also M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (indicating that the

principal requirement of *Wal–Mart* is a single common contention that enables the class action "to generate common *answers* apt to drive the resolution of the litigation") (emphasis in original).

At the same time, Petitioners cannot deny that whether any particular individual is a member of TdA would require a fact-specific, individualized determination.  It is true that the Court would have to determine the applicable legal standard, and this analysis would apply to every class member.  But the hearings themselves would proceed individually, as the relevant facts for each person differ.  Still, as in *In re Deepwater*, the Court can utilize individualized hearings to receive evidence and adjudicate the relatively-narrow issue of the person's alleged membership in TdA.

### 3.  Typicality

Typicality "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002) (quoting *James v. City of Dall.*, 254 F.3d 551, 571 (5th Cir. 2001)). "[T]he critical inquiry is whether the named plaintiff's claims have the same essential characteristics as those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727, 736 (5th Cir. 2023) (cleaned up).

Here, Respondents' course of conduct–i.e., the designation of individuals as alien enemies under the AEA–is identical as to every proposed class member.  Each putative class member challenges the lawfulness of the President's invocation of the AEA through the Proclamation.

Respondents argue that because the Named Petitioners have already received notice of their designation as alien enemies, and future class members may receive differing periods of notice, the Named Petitioners do not possess the same interest or suffer the same injury as the proposed class. (Resp., Doc. 45, 40–41)  But in making this argument, Respondents overlook that each proposed class member's claims would arise from a similar course of conduct, and would

advance the relatively-identical legal theory to challenge Respondents' actions. The Court may reach some of those legal issues before determining the adequacy of the notice procedures. And even if not, the factual differences would not arise to a level sufficient to defeat typicality.

### 4. Adequate Representation

"[T]he adequacy requirement mandates an inquiry into (1) the zeal and competence of the representatives' counsel and (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Berger v. Compaq Comput. Corp.*, 257 F.3d 475, 479 (5th Cir. 2001) (cleaned up) (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)).

In the present action, Respondents do not challenge the factor of adequate representation, and based on the education and experience of proposed class counsel, the Court finds that they would adequately represent the proposed class. (*See* Declaration of Daniel A. Galindo, Doc. 4–1 (summarizing education and experience of counsel))

### C. Application

The Court does not decide the legal question of whether class certification under Rule 23 is available in a habeas corpus proceeding. Rather, the Court relies on its authority under the All Writs Act to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. Based on this authority, the Court can employ "appropriate measures of procedure, by analogy to existing rules or otherwise in conformity with judicial usage," in habeas corpus proceedings. *Harris v. Nelson*, 394 U.S. 286, 299 (1969). Those existing rules include Rule 23 class actions. Thus, the Court considers whether the circumstances of this lawsuit render appropriate the use of a procedure analogous to a Rule 23 class action. And based on the special circumstances of this case and the relevant caselaw regarding Rule 23, the Court concludes that such relief should issue.

First, the lawsuit raises several common questions of law that may prove dispositive as to all Venezuelan aliens in the Southern District of Texas. As previously summarized, those issues concern whether the preconditions necessary to apply the AEA exist, and whether Respondents' application of the AEA violates individuals' due process rights or provisions of the INA and the Convention. While individualized evidentiary hearings would be required to adjudicate whether an individual within the class is a member of TdA, the common issues of law may obviate the need for any such hearings. And even if not, the resulting hearings regarding membership in TdA would be relatively focused, and would resemble the individualized damages analyses used in class actions such as *In re Deepwater*. The Court would schedule individual hearings and adjudicate the factual issues accordingly. In contrast, requiring individualized habeas corpus proceedings to repeatedly address the common legal issues unduly wastes judicial resources.

The Rule 23 factors of numerosity, typicality, and adequacy also support a class-like remedy. Although the record does not render clear how many individuals may become part of the class, it is apparent that Respondents at one time detained 100 Venezuelans designated as alien enemies in the Southern District of Texas, and that Respondents possess the authority to transfer detained aliens in the future into this Court's jurisdiction, or to detain Venezuelan aliens who reside in this District. Joinder of numerous individuals, detained in multiple detention facilities within the Southern District of Texas, would be impracticable. Each class member's claims arise from a similar course of conduct by Respondents and rests upon the same legal theory. And no party contests the adequacy of proposed class counsel, who constitute attorneys with ample experience in relevant areas of law and who have sufficient resources to zealously advocate on behalf of individuals designated as alien enemies under the Proclamation.

## II.    Conclusion

The unusual circumstances of this case present a compelling justification to utilize a procedure equivalent to a class action authorized by Rule 23. For these reasons, it is:

**ORDERED** that the Petitioner's Motion for Class Certification (Doc. 4) is **GRANTED** to the extent indicated in this Order and Opinion;

**ORDERED** that the Court certifies a class of Venezuelan aliens, 14 years old or older, who have not been naturalized, who Respondents have designated or in the future designate as alien enemies under the March 14, 2025, Presidential Proclamation entitled 'Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren De Aragua', 90 Fed. Reg. 13033, and who are detained or reside in the Southern District of Texas; and

**ORDERED** that Lee Gelernt of the American Civil Liberties Union Foundation is appointed lead counsel for the certified class, and all ACLU attorneys who have appeared in this matter as counsel of record for Named Petitioners are appointed co-counsel for the certified class.

Signed on May 1, 2025.

_Fernando Rodriguez, Jr._
Fernando Rodriguez, Jr.
United States District Judge